## WILLIAM O. REDDEN *vs.* PRESLEY SPRUANCE and others.

Stage proprietors are liable to the master of a slave for taking him as a passenger, *knowing* him to be a slave, and thus aiding his escape.

And they are bound to inquire with *due diligence* into the condition of colored passengers.

Suspicious circumstances, notice, &c., require the *utmost diligence.*

A colored man presenting himself in the night at a place where passengers were frequently taken up, and demanding passage; with nothing suspicious about him ; giving his name and residence, and offering the written evidence of his freedom, was admitted as a passenger for a short distance, and set down for inability to pay his fare, before they arrived where his papers could be examined : held that this did not amount to *negligence*, though he should turn out to be a slave.

The admissions of the negro not evidence for the master.

The declarations of the master *at the time*, admitted as a part of the res gesta to show why he was at a certain place, and to connect his acts there with the case.

His book entries not proper evidence of expenditures in search of his slave.

A witness may refresh his memory by a letter written by him at the time, but must be able to swear from recollection as thus refreshed and not from the paper only. Much less is the letter itself evidence, though the witness is willing to swear to his belief that what the letter contained was true.

THIS was an action on the case against the defendants as owners of the People's line of stages from Georgetown to Wilmington, for carrying away plaintiff's slave " Jerry," and aiding him to escape from his master's service, *knowing him to be a slave.*

The plaintiff proved that his man " Jerry," reputed to be his slave, ran away from the service of W. Jones, to whom he was hired, on Saturday afternoon, May 25th, 1839, and was afterwards seen in Philadelphia, but was never recovered. A man named Watson left the county some time before Jerry did.

*Azael Stevens, sworn.*—Drove defendants' stages from Milford to Camden in the spring of 1839. Has frequently taken up passengers on the road; the route from Milford to Smyrna is a night route. One night about that time took up a colored man or boy, at the junction of the three roads near Canterbury. He called to me; said he wanted a passage; said he was a free man named Peter Clayton; offered me a paper which he said was a pass, which he got from squire Redden. ·It was dark and I could not read it. I took him on the box with me; after we passed Canterbury, he offered to sell me a pistol. · He said he wanted money to pay his fare. I told him if he had no money he must get off, and I turned him off. I have not seen him since. He rode with me a very short way. I began the inquiry about him; asked his name, &c., as I did'nt wish to carry

him without inquiry whether he had a right to go and could pay. He said he wanted to go to Philadelphia. I don't think it was Saturday night. I drove down the next day to Milford. Either the next night, or the next but one, I saw Redden at Milford. He called on me, and I told him what I now say. Mr. Redden then said a pass for Peter Clayton would answer pretty well for his boy where they were not known. There was no one with me that night in the stage. I understood Redden to admit that he had given Peter Clayton a pass. There was nothing like a runaway about the negro; no concealment. I had no suspicion he was a runaway. I don't think he could have·overtaken the stage again that night. I know I left him behind.

The way-bill of May 25th, 1839, from Milford to Wilmington showed that a Mr. Watson entered from Milford to Wilmington; also a "*black man*" from Duck Creek to New Castle; also a "*black man*" from New Castle to Wilmington, who paid "*twenty-one cents, all he had.*"

The way-bill of the 31st of May, from Georgetown to Wilmington, showed that Wm. O. Redden was a passenger up.

*Charles Palmer, sworn.*—Saw a black man in New Castle, in May, 1839; a lightish colored negro, about twenty years old, five feet, eight or nine inches high; would weigh one hundred and sixty pounds. He was in company with John Watson. It was on Sunday morning, the 26th of May, between eight and ten o'clock, A. M., before the stage arrived. *Qu.* Did he admit himself to be the slave of Wm. O. Redden? Objected to and ruled out. (*State vs. Garrett,* post.) Heard Watson tell Jefferson, one of the defendants, *on Sunday afternoon,* that he knew this boy was running away from Redden, and that he ought to be taken up.

The plaintiff now offered to prove his own declaration when in New Castle, in May, 1839, that he was in search of a runaway slave; which, after argument, was admitted as a part of the res gesta, to show what caused his visit to New Castle.

The plaintiff then offered his book of accounts, in which he had charged the defendants with certain expenses occasioned by the search after this negro. Objected to, and ruled out, as not being matter of account; and being capable of proof otherwise.

Isaac H. Register, a witness, was shown a letter purporting to have been written by him to Mr. Redden, on the 30th of May, 1839, in relation to this negro, in order to refresh his memory as to the facts stated in that letter. The witness examined it and stated that

he had no recollection of the facts stated in the letter; but this letter was written by him. Its contents were then offered in evidence, and, after much argument, ruled out. Exception prayed and granted. (See post.)

The plaintiff had much difficulty in proving who were the owners of the stage line, it being a private association; a joint stock company without incorporation, or any public notification of the partners.

*Wootten*, for defendants, moved a nousuit, for failure of the proof: 1st. That Redden *owned* the slave, Jerry. 2d. That he runaway. 3d. That the defendants were *owners* of a stage line from Georgetown to Wilmington, &c. 4th. That defendants' stages took the slave away. 5th. That they did so *knowing* that he was the runaway slave of Redden.

The motion was opposed on the following grounds:—1st. It is not necessary to prove that the defendants took the boy *out of the State;* none of the counts alledge this. 2d. There is proof that Jerry was the slave of Redden; and if *any* proof, the case should go to the jury. 3d. So of the defendants' *knowledge* that the boy was a slave. *Gross negligence* amounts to guilty knowledge. There were circumstances which ought to have put the driver at Canterbury on his guard. The knowledge must be proved, but neglecting to acquire knowledge makes them culpable, and knowledge may be inferred from circumstances. These must be left to the jury. A negro taken up on the road at eleven o'clock at night by a stage coach, will not be *presumed* to be a free man. A suspicious, strange negro is deemed to be a runaway. (*Law of Slavery* 392.)

*The Court* granted the nonsuit on the ground that there was no proof that the defendants carried the slave off *with knowledge* that he was a runaway slave of Wm. O. Redden. Even admitting that there was evidence that defendants carried the slave in their stage, at all sufficient to go to the jury, there is no evidence whatever from which the jury could draw any conclusion of a knowledge on the part of the defendants or their agent, that this was a runaway slave. Nor is there such evidence of neglecting to make due inquiry as will charge the defendants. The negro man who was taken up near Canterbury, and permitted to ride for a short distance, presented himself at no unusual time or place, nor under any suspicious circumstances, as the stage driver testifies. The stage upward from Milford always passes the place where this passenger was taken up in the night; and it is usual to take passengers up thus on the road. The driver did make inquiry of this passenger; the only investiga-

tion that he could make under the circumstances, for it was dark and he could not then read the pass which was freely offered, and the passenger was turned off the stage before it arrived at Camden, where the pass could have been examined by a light. Under these circumstances, a passenger claiming admission into a public stage at the usual time and place, claiming to be a free man, and offering the evidence of his freedom, the driver would not have been justified in refusing him a passage, at least until he arrived where he could make further inquiry in relation to him; and this, in our opinion, does not amount to any evidence of negligence, such as can charge the defendants with culpably aiding the escape of this slave; even if the passenger so taken up was the slave of plaintiff, of which we express no opinion, because on that point there may be said to be evidence which ought to be weighed by the jury.

There is no other proof of *knowledge*. The conversation of Watson with Jefferson, which is proved by Palmer, and which would have been sufficient to put him on his guard; and would have required of him the strictest investigation as to his passengers; was not until the afternoon of Sunday, after the stage (which passes in the morning) had gone to Wilmington, having as a passenger "a black man," who is now said to have been the plaintiff's slave, and in reference to whom this conversation was had. Admitting again, that the identity of these ought to be left to the jury, there is nothing in this conversation which proves *knowledge* in Mr. Jefferson or any other of the defendants, that their passenger was not a free man.

As it respects the point that the plaintiff cannot recover without proof that all the defendants sued were joint owners, we incline against the defendants, on the ground that in actions in tort against several defendants where the tort may be joint, the plaintiff may recover against a part of the defendants only. (1 *Chit. Plead.* 86.)

We therefore direct a nonsuit, with liberty to defendants to move to take off the nonsuit after the decision of the Court of Appeals, on the exception to the decision of the court, ruling out the contents of the letter written by the witness, Register, to the plaintiff; this question being, on motion, reserved for hearing before all the judges. (See post, June term, 1846.)

*Houston* and *Layton,* for plaintiff.
*Wootten* and *Bates,* for defendants.